IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 124-011 |
| | ) | |
| WESLEY TRAVIS BOLDING | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

The Indictment charges Defendant Wesley Travis Bolding with one count of possession with intent to distribute marijuana, one count of illegal possession of a machinegun, and one count of possession of firearms in furtherance of a drug trafficking crime. (Doc. no. 1.) Defendant moves to suppress evidence seized from his vehicle during a traffic stop on December 28, 2022. The Court held an evidentiary hearing on September 5, 2024, and allowed the parties to submit supplemental briefing upon receipt of the hearing transcript. (See doc. nos. 34-36.) Neither party submitted a post-hearing brief. Having carefully considered all evidence and arguments, the Court **REPORTS** and **RECOMMENDS** the motion to suppress be **DENIED**. (Doc. no. 27.)

**I.    Facts**

At approximately midnight on December 28, 2022, Officer George Bensema of the Wrens Police Department received a phone call from his former supervisor at the Warrenton Police Department, Sergeant Stripling, informing Officer Bensema a black Jeep SUV was possibly on its way to the City of Wrens while transporting narcotics. (Doc. no. 37, Hr'g Tr. 8-9, 30-31.) Sgt. Stripling provided the license plate number and explained he stopped the

SUV and had concerns about narcotics but let the driver go without searching the vehicle. Hr'g Tr. 9, 31. At the time of the traffic stop, Officer Bensema had approximately five years of law enforcement experience with the Wrens Police Department, the Warrenton Police Department, and the Burke County Sheriff's Office. Hr'g Tr. 7-8. Officer Bensema currently works for a company that sells body-worn cameras and Tasers. Hr'g Tr. 7.

After receiving Sgt. Stripling's call, Officer Bensema saw the black SUV approaching Wrens city limits while he was sitting in the center median turn lane on Thomson Highway. Hr'g Tr. 9-10, 31. The SUV drove toward Officer Bensema in the opposite lane and passed him on the left side, in a well-lighted area near the center of town. Hr'g Tr. 10, 32, 33. When observing the driver's side of the SUV as it passed, Officer Bensema could not see inside the vehicle because of the "very dark" window tint. Hr'g Tr. 10; see also Gov't Ex. 5 (picture of outside of driver's side of SUV).

Having observed the dark window tint head-on in a well-lighted area, Officer Bensema pulled behind the SUV and observed a second violation, an obstructed license plate with the issuing state not visible under the plate frame. Hr'g Tr. 11; see also O.C.G.A. § 40-2-41 (requiring license plate be legible at all times and prohibiting apparatus that obstructs or hinders clear display and legibility of plate); Gov't Exs. 3 & 4 (pictures of SUV license plate). The dash camera activated when Officer Bensema pulled behind the SUV and captured the well-lighted area of downtown through which Officer Bensema followed the SUV until he initiated the traffic stop. Hr'g Tr. 13-14; Gov't Ex. 11. Once he initiated the traffic stop and made contact with Defendant, the driver of the SUV, Officer Bensema's body-worn camera ("BWC") captured the events of the stop. Hr'g Tr. 13; see also Gov't Ex. 1 (full BWC video

lasting approximately 29 minutes); Gov't Ex. 2 (approximately 11 minutes of extracted clips from full BWC video).

Officer Bensema made first contact with Defendant from the passenger side of the SUV, and he smelled fresh marijuana coming from inside the vehicle when Defendant rolled down the window. Hr'g Tr. 19, 37; Gov't Ex. 2, 0:00-:10; see also doc. no. 28-1, p. 2 (Wrens Police Dep't Incident Rpt.). Officer Bensema was familiar with the "very distinct" smell of marijuana, as he worked in the field on marijuana cases four to six times per week. Hr'g Tr. 23, 36. He also knew a larger quantity of marijuana strengthens the odor, as does enclosure in a vehicle compartment. Hr'g Tr. 23-24. Sgt. C. Hopkins, from the Wrens Police Department, arrived on scene after Officer Bensema, and he also commented multiple times about the strong smell of marijuana. Hr'g Tr. 17, 24, 25; Gov't Ex. 1, 2:20-:30 & 20:35-:40; see also doc. no. 28-1, pp. 1-2. Officer Bensema asked Defendant if he had been smoking marijuana. Gov't Ex. 2, 0:58-1:06. Defendant replied no, and Officer Bensema commented he smelled marijuana and asked Defendant to step out of the SUV. Hr'g Tr. 19; Gov't Ex. 2, 0:58-1:42. Officer Bensema testified he asked about smoking marijuana even though he smelled fresh marijuana consistent with his custom and practice of starting with questions about smoking marijuana rather than delineating between burnt and fresh marijuana. Hr'g Tr. 36-37, 53.

As Defendant stepped out of the vehicle, he rolled up the windows and locked the doors with his key fob. Hr'g Tr. 19; Gov't Ex. 2, 1:50-2:05. Officer Bensema patted down Defendant for weapons when he exited the SUV and informed Defendant he would be searching the car. Hr'g Tr. 19-20. Defendant repeatedly told Officer Bensema he was not going to search the SUV, and when Officer Bensema discovered the SUV was locked, Defendant refused to turn over the key fob. Hr'g Tr. 20, 39; Gov't Ex. 2, 2:20-:47. Officer

Bensema instructed Defendant to put his hands behind his back for handcuffing to ensure officer safety during the search because Defendant was being uncooperative and hostile. Hr'g Tr. 20, 43. When Defendant pulled away and struggled against the handcuffing, Officer Bensema arrested him for obstruction. Hr'g Tr. 20, 44; Gov't Ex. 2, 2:50-3:03.

After Defendant was handcuffed and placed in the back of Officer Bensema's patrol car, the search of the SUV commenced. Hr'g Tr. 21. Upon finding an empty duffel bag in the back seat, and based on his experience, Officer Bensema commented some drugs were probably just dropped off, and he proceeded to the trunk, where he discovered a white cardboard box taped shut. Hr'g Tr. 22, 46; Gov't Ex. 2, 3:57-4:18; Gov't Ex. 7 (picture of taped-shut white cardboard box). Officer Bensema cut open the box with his handcuff key, found ten large, sealed bags of marijuana totaling approximately ten pounds, and excitedly uttered, "Let's go!" Hr'g Tr. 22, 54; Gov't Ex. 2, 4:42-5:01.

Searching further in the SUV, officers found two loaded Glock handguns with additional rounds of ammunition, one of which had been stolen and modified to make it fully automatic. Hr'g Tr. 26-27; Gov't Ex. 8 (picture of marijuana, guns, and ammunition found in SUV). According to the Incident Report attached to the government's response to the motion to suppress, the modified Glock pistol, reported as stolen out of Alpharetta, Georgia, was located between the driver's seat and the center console with one round of ammunition in the chamber and twenty rounds in the magazine. (Doc. no. 28-1, p. 2.) Another magazine containing thirty rounds of 9mm ammunition was also located in the center console. (Id.) Sgt. Hopkins found the second, loaded Glock, along with additional ammunition in the front and rear passenger's side areas of the SUV. (Id. at 2, 10-11, 13.)

4

Officer Bensema tested the window tint. Hr'g Tr. 16. Tint on the front driver's side window tested at three percent light transmission, and tint on the rear driver's side window tested at one percent light transmission. Hr'g Tr. 16-17; Gov't Exs. 9 & 10 (picture of tint meter readings); see also doc. no. 28-1, p. 2 (memorializing tint readings). Officer Bensema testified the legal limit is thirty-two percent transmission, plus or minus three percent. Hr'g Tr. 11; see also O.C.G.A. § 40-8-73.1(b)(2).

## II.     Discussion

In his motion, Defendant contends Officer Bensema initiated the traffic stop based merely on a hunch conveyed by Sgt. Stripling, and there was no probable cause to search the SUV. At the suppression hearing, Defendant attempted to formulate new arguments that he had been illegally arrested for obstruction prior to the SUV search and that Officer Bensema was improperly working a continued investigation started by Sgt. Stripling during the prior traffic stop in Warrenton. Hr'g Tr. 55-62. The undersigned instructed these new arguments "will need to be briefed in a supplemental brief if you want to . . . rely on them." Hr'g Tr. 72. By failing to do so, Defendant affirmatively and intentionally relinquished these new arguments. See United States v. Campbell, 26 F.4th 860, 872 (11th Cir. 2022); see also Loc. Crim. R. 12(e) (requiring every motion specify "the statute, rule, or legal principle at issue"). Thus, the Court turns to the arguments raised in Defendant's motion.

### A.     The Vehicle Stop Was Supported by Probable Cause

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause. . . ." U.S. Const. amend IV. A traffic stop "is a seizure within the meaning of the Fourth Amendment," United States v.

5

Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001), but such a stop "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with Terry [v. Ohio], 392 U.S. 1 [(1968)]." United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (*per curiam*) (citing United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003)). "[R]easonable suspicion is a less demanding standard than probable cause," requiring a showing "considerably less than preponderance of the evidence," but there must be "at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also United States v. Gonzalez-Zea, 995 F.3d 1297, 1302-03 (11th Cir. 2021) (same). An "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the investigative stop. Terry, 392 U.S. at 21. An officer may then "briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993).

The Court must evaluate the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis" for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002); see also Gonzalez-Zea, 995 F.3d at 1303 (same). Reasonable suspicion "need not rule out the possibility of innocent conduct," but rather depends on a commonsense approach based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Navarette v. California, 572 U.S. 393, 402, 403 (2014) (internal quotations and citations omitted). As has been long settled by the Supreme Court, where there is probable cause to believe a traffic offense has occurred, the officer's subjective intent when initiating the stop is irrelevant to the Fourth Amendment inquiry. See Whren v. United States, 517 U.S. 806, 813 (1996)

("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id.) "An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively,* justify [the] action. The officer's subjective motivation is irrelevant." Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (internal quotations and citations omitted); see also Harris, 526 F.3d at 1338 ("The issue is not whether the particular officer involved 'actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify the [investigatory stop].'" (citation omitted).)

Defendant alleged in his motion Officer Bensema did not observe Defendant violate any federal, state, county, or city laws. (Doc. no. 27, p. 2.) Faced with uncontroverted evidence of two traffic violations at the evidentiary hearing, Defendant conceded the dark window tint and argued only that the license plate violation could not have been observed until the SUV passed by Officer Bensema. Hr'g Tr. 56. Regardless of the established traffic violations, according to Defendant, because Officer Bensema had received prior information from Sgt. Stripling about possible narcotics in the SUV, the stop was "textbook" pretext, and the evidence must be suppressed. Id. The Court disagrees.

O.C.G.A. § 40-8-73.1 provides in pertinent part as follows:

(b)    Except as provided in this Code section, it shall be unlawful for any person to operate a motor vehicle in this state:

. . . .

(2)    Which has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent, or increase light reflectance to more than 20 percent.

As Officer Bensema's testimony established - supported by Government Exhibits 5, 6, 9, 10, as well as video from Exhibits 1, 2, and 11 - the tint on the SUV windows appeared too dark to the naked eye to satisfy the thirty-two percent light transmission standard imposed by O.C.G.A. § 40-8-73.1(b)(2).  Indeed, Officer Bensema could not see inside the SUV when it approached him head-on, even in a well-lighted area.  Hr'g Tr. 10-11.

Officer Bensema's correct observation that the window tint appeared too dark was confirmed when he measured the tint on the driver's side windows at three and one percent, respectively.  Hr'g Tr. 16-17; Gov't Exs. 9 & 10.  Moreover, an obstruction of the license plate was plainly visible prior to the stop and in violation of O.C.G.A. § 40-2-41, which prohibits obstruction of the legibility of the license plate.  Hr'g Tr. 11; Gov't Exs. 3 & 4.  Officer Bensema had not only reasonable suspicion, but probable cause to believe, Defendant had committed two traffic infractions.

Any suggestion Officer Bensema's subjective beliefs about the presence of narcotics based on the information from Sgt. Stripling negates probable cause must fail because the constitutional reasonableness of traffic stops does not "depend[] on the actual motivations of the individual officers involved."  Whren, 517 U.S. at 813.  That is, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances viewed objectively, justify that action."  Id. (citation omitted).

Here, Officer Bensema repeatedly testified on direct examination, as well as under vigorous cross-examination, he initiated the traffic stop because of the observable window tint and license plate violations.  Hr'g Tr. 10, 11, 38, 39, 45, 49.  The Court credits the testimony of Officer Bensema.  See United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013)

(recognizing that credibility determinations are within the province of the fact finder and will be upheld "unless [the Court's] understanding of the facts appears to be unbelievable" (citation omitted)). He was calm and consistent throughout his testimony, including when pressed by defense counsel during a vigorous cross-examination to explain his actions. The video exhibits also support Officer Bensema's description of events.

As Officer Bensema observed Defendant committing two traffic infractions regarding window tint and license plate obstruction, any subjective belief he may or may not have held about the possibility of narcotics in the vehicle does not invalidate the stop. Rather, the evidence shows that when viewed objectively, the traffic stop was reasonable under the Fourth Amendment because Officer Bensema observed two traffic violations.

**B.     The Search of the Vehicle Was Also Supported by Probable Cause**

Having validly initiated the traffic stop, Officer Bensema had probable cause to search the vehicle when Defendant rolled down his window and Officer Bensema smelled a strong odor of fresh marijuana. In general, the police may search an automobile without a warrant under three circumstances: (1) incident to the lawful arrest of a recent occupant of the vehicle "if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest," Arizona v. Gant, 556 U.S. 332, 351 (2009); (2) based upon probable cause if the vehicle is readily mobile, see Pennsylvania v. Labron, 518 U.S. 938, 940-41 (1996) (*per curiam*) (citing California v. Carney, 471 U.S. 386, 390-91 (1985), and Carroll v. United States, 267 U.S. 132 (1925)); or, (3) with valid consent, see Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).

Particular to "the automobile exception, agents may conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable

cause to believe the vehicle contains contraband or evidence of a crime." United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006). "To determine whether probable cause exists, we perform an objective analysis that does not account for the subjective beliefs of law enforcement." United States v. Williams, 731 F. App'x 863, 867 (11th Cir. 2018) (*per curiam*) (citing United States v. Franklin, 694 F.3d 1, 9 (11th Cir. 2012)). Once probable cause "justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." Wyoming v. Houghton, 526 U.S. 295, 301 (1999) (citing United States v. Ross, 456 U.S. 798, 825 (1982)). This principle has been broadly applied to all containers within a car. Id. (citing California v. Acevedo, 500 U.S. 565, 572 (1991), and United States v. Johns, 469 U.S. 478, 479-80 (1985)).

Courts have long held that an officer's detection of marijuana odor during a traffic stop satisfies probable cause to justify a warrantless vehicle search without consent under the Fourth Amendment. United States v. Rivera, 595 F.2d 1095, 1099 (5th Cir. 1979)[1](citing United States v. Ogden, 572 F.2d 501, 502 (5th Cir. 1978) (*per curiam*)); United States v. Garza, 539 F.2d 381, 382 (5th Cir. 1976) (*per curiam*) ("[T]he odor of marijuana emanating from the vehicle gave the officer probable cause to conduct [a] search."); see also United States v. Stancil, 4 F.4th 1193, 1199 (11th Cir. 2021) (explaining marijuana smell emanating from vehicle provides probable cause to search vehicle); Adams v. Office of Governor, 818 F. App'x 887, 889 (11th Cir. 2020) (*per curiam*) (same); United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable

---

[1] Under Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

10

cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana."); United States v. Smith, 596 F. App'x 804, 807 (11th Cir. 2015) (*per curiam*) (recognizing smell of fresh marijuana coming from inside car provides probable cause to conduct warrantless search of same).

Here, the credible testimony shows after Officer Bensema validly initiated a traffic stop, he detected, through a rolled down window, the odor of fresh marijuana emanating from inside the vehicle. Hr'g Tr. 19, 37; Gov't Ex. 2, 0:00-:10, 0:58-1:06. He was familiar with the "very distinct" smell of marijuana, having dealt with such cases in the field four to six times per week. Hr'g Tr. 23, 36. Sgt. Hopkins also repeatedly commented on the odor of marijuana coming from inside Defendant's SUV. Hr'g Tr., 17, 24, 25; Gov't Ex. 1, 2:20-:30 & 20:35-:40. Defendant's focus on Officer Bensema asking about smoking marijuana rather than the presence of fresh marijuana, (Hr'g Tr. 36-37), does not negate Officer Bensema's credible testimony he smelled fresh marijuana, (id. at 19, 37), a point supported by the presence of the large quantity of marijuana in an enclosed area within the SUV. Because the marijuana smell provided probable cause to search the SUV, Defendant's refusal to consent to the search is of no consequence. See United States v. Corley, 408 F. App'x 245, 247 (11th Cir. 2011) (*per curiam*) ("A warrantless search and seizure of a vehicle is permissible, even without consent, when officers have appropriate probable cause. . . .").

Because the SUV was readily mobile and Officer Bensema had probable cause to search based on the smell of marijuana, the warrantless search did not violate the Fourth Amendment, and the contraband should not be suppressed.

### III.  Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**.  (Doc. no. 27.)

SO REPORTED and RECOMMENDED this 15th day of January, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA